Excuse me, Friedman v. Bloomberg L.L.P. and Paladine International. Go ahead, Mr. Kaufman. Members of the Court, my name is Alan Kaufman. I'm representing Dan Friedman along with my colleague Steve Greigel. And I wanted to explain where this case comes from. Dan Friedman, our client, was sitting in his house in Stanford, Connecticut, and started getting e-mails and phone calls that were part of a solicitation to go to work for a company that purported to be a hedge fund in Amsterdam, the Netherlands. It turned out that Paladine was not a hedge fund. Paladine represented itself as a company with a diversified clientele of pension funds, trusts, high net worth individuals, and so on. But it turned out, as Mr. Friedman learned when he got to Amsterdam, that Paladine was really a front for the Gaddafi regime. The CEO and founder of Paladine, Ismail Abouder, is the son-in-law of the former Prime Minister of Libya, who at the time was . . . You state this as if these were facts, but these are your client's allegations, right? These are facts in the public record. Well, okay. The public record being what, the Bloomberg release? No, no, Your Honor. These are facts. In any event . . . Whatever it is, he went to work for Paladine, and Paladine . . . We know these facts. Right. So your argument to us is . . . The argument is that he went to work, he brought a suit when it turns out that Paladine was not . . . Right. Right. And that once he brought . . . Pardon me, Your Honor. Connecticut has a law on long-arm jurisdiction. That's correct. And what's wrong with that law according to the appellate? Well, first of all, that law does not apply to Bloomberg, the defendant, the entity. Okay, but leave that aside. Yes. You're still . . . I mean, you're just proceeding against Bloomberg at this point? No, Your Honor. Oh, okay. What I meant was that Bloomberg is not . . . that is not an issue . . . Oh, I understand. . . . with Bloomberg defendant. And the problem with that law is that it is . . . the long-arm statute is a statute of access. Its sole function is access to the courts. And that particular statute impacting access to the courts carves out . . . Oh, excuse me, allows access for every single resident of Connecticut for whatever cause of action they may have against a foreign or out-of-state defendant. But, when it comes to defamation, if the person who defamed you . . . And why isn't that . . . and you're challenging the constitutionality of that statute? Yes, as it applies to the individual defendants. As it applies to the individual defendants. But, what is the basis for your claim? Is it equal protection? Is that what you're claiming? No, the basis is that it . . . Which constitutional norm does it violate? It's the right to petition. Because, what it does is it takes two equal First Amendment rights. Right to petition, freedom of the press, which all Supreme Court cases have stated are equal and in balance. The legislature wouldn't have to have a long-arm statute, would it? Pardon me? At all. No, but . . . I mean, so what is the right to petition here? Can't they single out some . . . you know, allow some people to sue and not others? I don't . . . on . . . Allow some people to sue certain defendants, but not others? What the legislature clearly can do is modify an underlying claim that either comes from statute or common law. That they clearly can do, and those are the cases that are cited by the defendants. But, what they cannot do is take a statute that relates to access to the courts . . . and deprive the ability to petition for an underlying claim that remains valid, simply because of the fortuity. The right to petition exists only to the extent that a claim exists, right? That's correct. And, why can't the legislature say, here, there is no claim? We're not allowing a claim in these circumstances. Then, what they would have to do is amend the defamation law to say that there is no defamation . . . when the defamation comes from outside of the state, as a matter of substance. That's not what they did here. Well, why haven't they done that de facto, in the course of passing this law? Pardon me? Why have they not done that de facto, in the course of passing the long-arm statute in the form that it is? Because they didn't go to the underlying claim. They went to the right to petition and access to the courts. And, what they said, what the conclusion is, that we infer . . . The statute says . . . What? The statute says that there is a right that you can sue somebody on long-arm for various . . . under various factual circumstances. One of which . . . As long as it doesn't relate to . . . One of which this case falls into. That's correct. You know, do human beings have some right, under natural law, to bring defamation claims? I guess that's where I would start. No, they have it under the common law of the state of Connecticut and of most states. And then, the question is, can they advance that by going into court? And, what happened in this particular case is that the legislature carved out an exception, not for defamation, but for defamation claims where the person who defamed you is out of State or outside of the country. Right. That sounds like an equal protection claim you're trying to make. It would also be that. Yes. And, if so, what is the standard against which we judge that? Is it strict scrutiny, or is it a rational basis? The cases we presented indicate that when you touch right to petition, you're under strict scrutiny. If it's . . . You mean a right to petition in an equal protection context? Is that what you're saying? The right to petition, in absolute terms, is strict scrutiny. There is no inhibition that one can place on the right to petition that's subject to the rule of reason. Yeah, but by that reasoning, anybody could bring any claim he or she wanted to under any law in the State of Connecticut. Against out-of-State defendants who were hailed in from . . . So long as the long-arm statute says so. It's an access statute. Right. And, in this case, it says you can do most of that, but you can't do it here. That's correct. Right. So, I mean, by your reasoning, it seems to me the right to petition always trumps any limitation that the long-arm statute may . . . but that a State wants to set in its long-arm statute. No. Our position is that in this particular case, the long-arm statute, to the extent that it creates a right of access, cannot weigh right to petition against First Amendment and say that in certain unique circumstances involving out-of-State defamers, you have no right to petition, that their freedom of speech and freedom of the press is supreme. We have no precedent or any in this circuit on this question, right? No, there isn't, Your Honor. Or anywhere. Anywhere. But I'd like to address . . . Yeah, and you're . . . as you see, your red light is about to go on, so I'm going to give you one more minute. I was supposed to get ten, and it started me at five. Well, you've asked for three minutes of rebuttal, right? Yes, but I'd like to address defamation, because without defamation . . . Well, let's not argue about it. Focus on defamation right now, and you've got two minutes. And then you're going to still have three minutes of rebuttal, so it's a gift. Thank you, Your Honor. The other side can add a minute to each of their times. The defamation in this case arises from two statements, and the standard for defamation is whether any of those statements could be reasonably susceptible to an interpretation that would be defamatory. The first statement, with regard to extortion, the defendants have not even addressed the facts. We pointed out in our brief that if one does a search on Lexis of the words extortion and defamation, you get 507 hits. If you do defamatory with extortion, you get 200-some hits. What's unique here is the repeated extortion. Yes. What's unique in this . . . Let me just characterize. Not the $500 million and not the extortion, but the repeated extortion. It's repeated extortion in the past, which means that it's not related to the litigation that was filed. It's a statement that there have been past events that were repeated involving extortion, demands of money from the company, and that the plaintiff was dismissed for gross misconduct. That's all in one sentence. Now, they're going to argue that this is opinion, and your response to that is? Opinion is only protected when the opinion states the underlying facts that are the basis for the opinion. When there's a mix of opinion and fact, then it goes to the jury because there . . . Or if the facts are undisclosed. If they're undisclosed, exactly. And there is no disclosure or suggestion of any type of event that had occurred in the past that constitutes extortion. It's a statement that's based on implied assumption that specific events occurred that are not disclosed . . . Right. . . . and that are defamatory. And under those circumstances, that is not protected. These facts that are undisclosed are capable of being proven true or false. Precisely. And part of the problem was that the Court didn't allow discovery to find out what Paladin was talking about. Thank you. You've reserved three minutes for rebuttal, Mr. Kaufman. Your Honors, it's Derek Adler for the Paladin appellees and the Miltown appellees, who are the foreign appellees. Excuse me. Oh, you're representing the foreign . . . That's right. Yeah, I'm sorry. You'll deal with the . . . Bloomberg's counsel and I had agreed that I would go first because my issues logically come before hers. And she'll address the questions mainly about whether the statements are defamatory or not. So, the claims, as Your Honors know, were dismissed against the various foreign defendants because they were excluded under Section 5259 of the Connecticut Long-Arm Statute, which doesn't cover defamation claims. The first ground of challenge to this is under the constitutional right of petition. This has never been held in any case that we've seen to restrict the right of the state legislatures to set either the substantive or the procedural elements for state law causes of action. The nature of Long-Arm Statute . . . Is there any case that binds us in your favor? I don't know . . . That is Supreme Court or Second Circuit. No, there's not, Your Honor. Not that I'm aware of, but . . . But you win anyway because of the argument you're about to tell us. That's correct, Your Honor. I mean, the nature of Long-Arm Statutes, as Your Honor was alluding to before, is that they actually extend a jurisdiction that didn't exist before international shoe. They allow . . . In these statutes, the states allow people to bring cases that they wouldn't otherwise be able to bring in the state courts because the defendants are overseas. And in that sense, what they do is . . . They don't have to do with whether you can bring a claim. They don't have to do with whether you get to go to the court and petition. They affect where you go in the interstate context and also in the international context. It's not about whether you can petition, but where you get to bring your petition, whether it's in this state or some other state where the defendant resides. This Court and others . . . This is in the Second Circuit's Beretta decision . . . There's no other state where they reside in this case, right? That's correct. They're foreign. They're all foreign in this case, yeah. So you're relegated to the foreign forum. That's correct. And the principle is the same. The Long-Arm Statutes apply, obviously, the same for interstate and in foreign. This Court in Beretta had held that it was okay for the State of New York to terminate claims against a specific class of defendants. That was a case where the State of New York had passed a statute that cut off cases against gun manufacturers. And this Court held that that was not a violation of the right of petition. Other courts around the country . . . The Bowman case in the Seventh Circuit have held that statutes of limitations don't infringe on a right to petition. These are statutes that focus on a particular cause of action and cut off the rights of parties to pursue their claims after a certain point in time. So the argument they're making up here would open up floodgates. Why isn't this a limitation on whether you get to go to court? Because you can still go to court in the other jurisdiction. You can still go to court in . . . We don't get to that. But it's . . . As I understand it, in many other countries, libel laws are not as protective of plaintiffs as they are in this country? I take it that . . . I believe that that is true. That is certainly true. Although here we have the First Amendment, which is in tension with this as well. And that actually segues to their equal protection argument. They do make a separate equal protection argument. I think they've really conceded in their papers that this is a rational basis review. There's not a protected class here. There's no fundamental right to bring a state law cause of action. And here, there's a strong presumption. Once you get, obviously, to rational basis review, there's a strong presumption. They've got a heavy burden to show that there's no conceivable basis. The long-arm statute here was enacted by Connecticut. It was modeled by a New York statute that was enacted after years of debate and study. This Court actually . . . The rationale is what? The rationale is that in the First Amendment context, the state where a defendant resides, and this was developed primarily for media defendants, but it doesn't apply to them at all, the state where the defendant resides has a uniquely strong interest in applying its First Amendment policies to protect the speaker of a defamatory statement and not create a situation where you can be dragged into court anywhere around the country, around the world, based on statements. So, it's actually a pro-First Amendment rationale that was recognized by this Court in the Best Van Lines case and by the Court below in deciding this case here. So, the constitutional arguments they've made about the long-arm statute have no substance. I should note that there was a separate . . . There's a question here about whether Paladine, which is a Dutch BV, should be considered to come under the long-arm statute that applies to partnerships or corporations. There's an open question of laws to whether Dutch BVs are . . . or a corporation. They have attributes of both. The Court didn't need to decide that because the corporate long-arm statute here, which doesn't have an exclusion for defamation, didn't apply anyway because there was no tortious conduct in the state. I should say, in any event, even if Your Honors were to find the statute unconstitutional, they don't meet the statute anyway. There was no tortious conduct. It would need to be remanded for findings about whether, if the statute were unconstitutional, whether they came within it anyway. Unless there are any further questions, I'll sit down. Thank you, Mr. Adler. Thank you, Your Honors. Good morning, Your Honors. Sharon Schneier from Davis Wright Tremaine for Appellee Bloomberg. I'd like to address a couple of the comments that Mr. Kauffman made. First of all, in looking at the statements that they've alleged are defamatory here, the Court of Appeals of New York in this court has made it very clear that we are not to parse out the words and look at them in isolation. And here, the statement from Paladine that is quoted in the article came after a long recitation of the allegations of plaintiff's complaint in which they accuse Paladine, as the title of the article says, accuses Paladine of engaging in a suit of laundering money for Gaddafi and goes on to list in great detail the allegations of fraud and criminal activity that Mr. Friedman makes. At the end of the article, it quotes an email statement from Paladine that says, and let me read it to you, these entirely untrue and ludicrous allegations have been made by a former employee who has repeatedly tried to extort money from the company. As Judge Hall was suggesting earlier, the use of the word repeatedly, does that not suggest some prior incidents of extortion? Not in the context of their responding to these allegations. How does repeatedly fit in, in terms of responding to these allegations? Well, what it is referring to here is the reference to the several attempts that Mr. Paladine's criminal exposure and its frustration with Mr. Friedman's attempts to push Paladine and in filing the lawsuit. So I don't think it has any specific reference here at all. And then the next sentence was, he was dismissed after two months for gross misconduct. When you take them together, could a reasonable juror conclude that there must have been some prior act of extortion in the earlier two months? Well, I don't think so, Your Honor. I think that would be giving it a hyper-technical reading that you're No, the word repeatedly is inserted in there. It's not, it's just tried to extort would be fine. But that's not what you said. It's repeated. You can't kind of take the repeatedly out of it. And I think that's what you're trying to do. You're trying to read repeatedly out of this statement. Well, I'm not, just to answer, yeah. The first question about the gross irresponsibility, which is in a second second, I'm sorry, the gross misconduct, which is in the second second sentence, I think that is addressing Mr. Friedman's statement that he was terminated with no legally cognizable explanation. And I think that the record here is that Mr. Friedman had, before, he filed the lawsuit gone to Paladine and also said, hey, if you don't, you know, if you don't settle with us. That's not what the statement says. That's the problem for your side here. Well, I understand. That may be, that may certainly be why it's capable of being proven true or false. Right. But that doesn't help you. Well, I understand that, Your Honor. But I think when you're looking at- Let me ask you this. If you assume, let's assume that it's not opinion, it is fact for some of the concerns we've raised. What's your, you have another argument. Your argument is that it was not irresponsible, grossly irresponsible? That's right. Can you flesh that out for us? Well, first of all, I would say we have two arguments here. One is that it was a fair and accurate report of Paladine's response to the lawsuit, which the district court did not agree with because it was not yet made in a formal pleading. Because, as you've heard, they've been engaged in, you know, jurisdictional discovery still and they have not responded. But our other response, which is on pages 49 and 50 of the brief, that Friedman had been pressuring Paladine to settle discreetly and privately. So even if, even, you know, looking at it that way, it's clear that the extortion statement reported by Bloomberg and reflected Paladine's position in response to the litigation in the same manner as described by this court in Silver. And so it would also not be actionable for that reason. Thank you. Mr. Kaufman, you've reserved three minutes. Thank you, Your Honor. I want to focus on defamation because if there is defamation, there's no jurisdictional issue with regard to Bloomberg entity defendant. And the only issues on constitutionality would relate to the individuals. So I think that defamation is at the core. And I believe that what was just said is a significant inaccuracy about the statement. How so? Because the question is what the reader is reading. And these reference to prior settlement negotiations are not anywhere to be found in the article. The person reading the article just knows that Paladine said that there have been repeated efforts to extort money from the company by an employee who was terminated for gross misconduct. And the very clear law of New York on defamation says that if there is any reasonable interpretation of that set of statement, that statement that could be defamatory, it goes to trial. And part of what was just said, pardon me. Do you agree that this was a matter of legitimate public concern, the general topic of the article? Whether there had been, the article, I assume it might have been. But there's nothing in the statement about the extortion. Money laundering for Gaddafi is, I would, probably my views don't count, but I suspect is an area of legitimate public concern, right? I would agree with that. But that, I don't believe, sets a malice standard. And if there were going to be malice, there should have been discovery. If it's a matter of public concern, do you not have to show that the publisher acted in a grossly irresponsible manner without due consideration? Well, there are two things. First of all, we should have been allowed to conduct discovery to find out what the publisher did. Because it's not clear in the article. Would you have to allege enough facts in the complaint to show that the publisher acted in a grossly irresponsible manner? I believe that the gross irresponsibility in this case is not the way it reported the case. It reports on a statement by Paladin that has nothing to do with the case. The case has nothing to do with settlement discussions or anything else. It reports that there were past events of a repeated nature that preceded the litigation. Bloomberg was not reporting on the litigation when it parroted those statements. Bloomberg was reporting on a smear, a libel of our client by Paladin having nothing to do with the litigation that was being discussed. They preceded it with what your client had alleged about Paladin. That's correct. Right. So, I mean, there was clear, they were reporting on a dispute, not a smear. No, they were reporting on a dispute. And then what they did was publish. I mean, any of us in this business, you and I know that there are lots of things that happen as a dispute gets heated up before it gets filed as a complaint in court. That's correct. If a plaintiff's lawyer is doing a good job and if insurance company's lawyers or defense counsel are doing a good job.  But in this case, Your Honor, they are not reporting on the litigation. The fair report privilege which Judge Thompson found did not apply, even if it applied, only applies to reporting on the litigation. And the literal repetition word for word of an anonymous press release from a defendant referring to prior events of a repeated nature that preceded any filing of litigation is not a fair report, even if that privilege applies, about the litigation. Even if it's true. And even if it's true. But we don't know that it's true because the question is what is the reader seeing? And what the reader is seeing, and I believe our brief is very detailed on this, they are seeing a mix of fact and opinion or a statement which by implication suggests serious misconduct by somebody that precedes and has nothing to do with the litigation.  Thank you, Your Honor. Thank you both. Thank you all three of you, excuse me, and we'll reserve decision.